UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREEPLAY MUSIC, LLC,

       Plaintiff,

– *against* –

RIGOL TECHNOLOGIES USA, INC. and
RIGOL TECHNOLOGIES, INC.

       Defendants.

**OPINION & ORDER**

18 Civ. 10980 (ER)

RAMOS, D.J.:

  Freeplay Music LLC ("Freeplay") brings this action against RIGOL Technologies USA, Inc. ("RIGOL USA") and RIGOL Technologies, Inc. ("RIGOL Inc.") (collectively, the "RIGOL Defendants") alleging copyright infringement and unjust enrichment. Doc. 1. Before the Court is RIGOL Inc.'s motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to provide proper service. Doc. 24. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

  Freeplay is an online music library that makes its songs available for use in audiovisual works, subject to a license and, depending on the nature of the intended use, a fee. Doc. 1 ¶¶ 22–23, 25–29. All business uses require a paid license. *Id.* ¶ 29. RIGOL Inc. is a multinational technology company and electronics manufacturer with headquarters in Beijing, China. Doc. 1 ¶ 3; Doc. 25, Ex. 14 at 4. RIGOL USA is a wholly owned subsidiary of RIGOL Inc., organized under the laws of the State of Ohio and with its principle place of business in Beaverton, Oregon. Doc. 1 ¶¶ 4–5.

  This matter arises from the RIGOL Defendants' alleged unauthorized use of five musical compositions and sound recordings to which Freeplay holds the copyrights—"Highway Five," "Can Do," "English Channel," "Topaz," and "Clear." *Id.* ¶ 33. Over a

three-year period from March 5, 2014 through February 7, 2017, the RIGOL Defendants used the musical works at issue in product advertising and promotional videos posted to YouTube and Facebook without a license to do so.[1] *Id.* ¶¶ 34–38; Doc. 25, Ex. 14 at 14. The number of videos in which the works were featured is disputed, but ranges from 41 to 170. Doc. 26. According to RIGOL Inc., the videos at issue were created in China and then sent to RIGOL USA, where they were edited and subsequently posted to YouTube and Facebook. Doc. 24, Ex. 1 at 1–2. The employee who created the videos allegedly obtained the songs from a third-party website that represented that the music was available license-free. *Id.* at 2.

When it discovered the videos, Freeplay's agent, TuneSat, LLC ("TuneSat") corresponded with the RIGOL Defendants to alert them of the infringement. Doc. 1 ¶ 39. During the course of this correspondence, RIGOL USA stated that "[o]ur parent company in China is in charge of [the] video content [at issue] . . . and would like to know how to resolve this issue," referring to RIGOL Inc. Doc. 25, Ex. 5 at 16. They also stated that it was "[their] understanding that the music was free when it was used for the videos," and requested an estimate for licensing. *Id.* at 14. TuneSat responded that Freeplay would be willing to accept $184,500 in compensation for past use. *Id.* at 13. After several follow-up e-mails from TuneSat that went unanswered, the General Manager for RIGOL USA, Michael Rizzo, alerted Freeplay that the content had been, or would soon be, removed from all public sites and that RIGOL USA considered this the "complete resolution" of the matter. *Id.* at 10. TuneSat indicated that it disagreed, and after several months without a response from RIGOL USA, wrote again to advise that a number of the videos were still on the Internet and that Freeplay was considering taking legal action. *Id.* at 1–6. Rizzo wrote back only to state that the five remaining active videos had been posted

---

[1] The record is silent as to the subject matter of the videos.

by a third-party distributor in Poland and were removed as of July 18, 2017. *Id.* at 1. He did not address Freeplay's previous settlement offer or its intent to protect its rights. *Id.*

### B. Procedural History

Freeplay commenced this action on November 26, 2018 against RIGOL USA and RIGOL Inc. alleging copyright infringement, contributory copyright infringement, and unjust enrichment against both defendants, and vicarious copyright infringement against RIGOL Inc. Doc. 1 ¶¶ 41–83. It then attempted to serve both RIGOL Defendants by serving RIGOL USA in Oregon. Docs. 11–12. Chris Armstrong, an employee of RIGOL USA, accepted service on behalf of both companies. *Id.* RIGOL USA answered the Complaint on January 18, 2019. Doc. 16. However, RIGOL Inc. contested both that it was subject to personal jurisdiction in this Court and that it had been properly served. Doc. 14. On April 12, 2019, RIGOL Inc. filed the instant motion to dismiss the claims against it pursuant to Federal Rules of Civil Procedures 12(b)(2) and 12(b)(5). Doc. 24. Freeplay requests limited jurisdictional discovery in the events the Court finds RIGOL Inc.'s motion persuasive. Doc. 25, Ex. 14 at 25.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

"Where, as here, a plaintiff is proceeding under a federal statute that does not contain its own jurisdictional provision, 'federal courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 494 (S.D.N.Y. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010)). In determining personal jurisdiction over a non-domiciliary, New York courts engage in a two-step analysis. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007)). The first step is the application of New York's long-arm statute. *Id.* If the exercise of personal jurisdiction is deemed appropriate

pursuant to the long-arm statute, the second step is to determine "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164.

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery and no evidentiary hearing, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Id.* The Court construes all the plaintiff's allegations as true and resolves all doubts in his favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

**B. Rule 12(b)(5)**

In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, a court may also look to materials outside the complaint to determine whether it has jurisdiction. *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." *Id.* (quotation marks and citation omitted). When a defendant challenges the sufficiency of service pursuant to Rule 12(b)(5), "the plaintiff bears the burden of proving its adequacy." *Id.*

To evaluate a 12(b)(5) motion, courts look to Federal Rule of Civil Procedure 4, which governs service of process. Pursuant to Federal Rule 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Second Circuit has held that Federal Rule of Civil Procedure 4 is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (internal quotation marks omitted) (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)). Incomplete or improper service may lead a court to dismiss an action "unless it appears that proper service may still be obtained." *Id.* (internal quotation marks and citation omitted). Thus, a court may dismiss an action when it appears that "there is simply no reasonably conceivable means of acquiring

jurisdiction over the person of the defendant." *Id*. (quoting *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 554 (5th Cir. 1959)).

### III. DISCUSSION

For federal courts to exercise personal jurisdiction over a party, "(1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process." *In re Platinum and Palladium Antitrust Litig.*, 14 Civ. 9391 (GHW), 2017 WL 1169626, at *39 (S.D.N.Y. Mar. 28, 2017). As discussed in further detail below, the Court finds that the first two of these requirements have not been met with respect to RIGOL Inc. Given this finding, the Court need not reach the due process analysis. The Court also denies Freeplay's motion for limited jurisdictional discovery.

#### A. Proper Service

RIGOL Inc. alleges that it has not been properly served. There is no dispute that RIGOL Inc. is a foreign corporation and that Freeplay has attempted to serve RIGOL Inc. only by serving its wholly owned subsidiary, RIGOL USA in Oregon. The question before the Court is whether this was sufficient.

Under New York law, a foreign corporation must be served both through the New York Department of State and at its foreign offices. *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (citing N.Y. Bus. Corp. L. § 307). Because this would require the transmittal of a judicial document abroad, the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents (the "Hague Convention")—to which both the United States and China are signatories—applies. *Id*. (citing *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 700 (1988)). There are

6

two exceptions to this requirement: the plaintiff may either "allege[] sufficient facts to make a *prima facie* showing that [a subsidiary] is the foreign parent's general agent in New York," or it must show that the subsidiary "is so dominated by the foreign parent as to be a 'mere department' of the parent (that is, not a distinct entity)." *Int'l Cultural Prop. Soc. V. Walter de Gruyter & Co.*, No. 99 Civ. 12329 (BSJ), 2000 WL 943319, at *1 (S.D.N.Y. July 6, 2000) (citation omitted). To show an agency relationship, a plaintiff must show that "the subsidiary does all the business which [the parent corporation] could do were it here by its own officials." *Id.* (internal quotation marks and citation omitted). Alternatively, to determine if a subsidiary is a "mere department" of its parent, courts look to four factors: "common ownership; financial dependency of the subsidiary on the parent corporation; the parent's control over the subsidiary's selection of executives and observance of corporate formalities; the parent's control over the subsidiaries' marketing and operations." *Darden*, 191 F. Supp. 2d at 388 (citation omitted).

Freeplay argues that it need not follow the Hague Convention and that it properly served RIGOL Inc. through its subsidiary in the United States because RIGOL USA is a "mere department" of RIGOL Inc. The first factor, common ownership, is clearly met. *See* Docs. 15, 16 ¶ 4. Freeplay points primarily to three sources in support of the other factors.[2] First, in a press statement, the President of RIGOL Inc. refers to RIGOL USA as a "regional operations facility." Doc. 25, Ex. 1. Freeplay argues that this "clearly demonstrates that RIGOL USA is merely . . . supporting RIGOL [Inc.]'s direct operations in the U.S. and not . . . acting as a separate company engaging in business activities

---

[2] In its Complaint, Freeplay offers only the conclusory statement, "RIGOL Inc. dominates the management of RIGOL USA." Doc. 1 ¶ 57.

7

distinct from those of RIGOL [Inc.]" Doc. 25, Ex. 14 at 22. The article introduces RIGOL USA's vice president, who was hired by RIGOL Inc., and allegedly shows RIGOL Inc.'s "direct control over RIGOL USA's executives and personnel." *Id.* at 23. Second, Freeplay directs the Court to RIGOL USA's Answer, in which it admits "that at all times material hereto, RIGOL USA's management reported to RIGOL Inc." Doc. 16 ¶ 58. Finally, Freeplay points to admissions that that the infringing videos "were produced by our team in Beijing" and that RIGOL Inc. was "in charge of [the] video content" at issue. Doc. 25, Ex. 5 at 10, 16.

Though a close call, the Court finds that these facts are insufficient to establish that RIGOL USA is a "mere department" of RIGOL Inc. There is no showing of financial dependency or any suggestion that the two entities disregard corporate formalities. Nor is there any evidence to rebut RIGOL USA's assertions that it is "largely financially independent of RIGOL Inc.," has separate bank accounts, manages its own day-to-day operations, makes its own distributor decisions, files its own tax returns, maintains separate business insurance, operates its own marketing programs and sales activities, and so forth. *See* Doc. 24, Ex. 3 ¶¶ 3–11. As to any argument that RIGOL Inc. controls RIGOL USA's marketing and operations, this is unsupported by the evidence. Even drawing all inferences in Freeplay's favor, there is nothing in the evidence to suggest that RIGOL Inc. approved the videos after they were edited by RIGOL USA, or even that RIGOL USA was required to use the videos at all. The Court therefore finds that Freeplay has failed to establish that RIGOL USA is a "mere department" of RIGOL Inc.; consequently, service of process on RIGOL Inc. was not properly effectuated through its wholly owned subsidiary.

Freeplay suggests that, in any event, it is within the Court's discretion to order alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3) and that service on RIGOL Inc.'s U.S. counsel would be acceptable in this instance. Before finding that alternative service is necessary, "courts in this Circuit have generally required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). However, Freeplay has failed to "articulate[] good reasons why it could not have realistically served [RIGOL Inc.] until now." *Id.* at 280. This is not a case where repeated amended pleadings would have rendered service via the Hague Convention useless, *id.*, or where RIGOL Inc. has withheld its address from Freeplay, *see Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 378–79 (S.D.N.Y. 2018), or where China has refused to effect service under the Hague Convention, *see Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 514–15 (S.D.N.Y. 2013). Though the Court is mindful that service under the Hague Convention is time-intensive, in the instant case, this alone does not excuse Freeplay from attempting such service at all. The Court therefore denies without prejudice Freeplay's motion for alternative service. *See, e.g.*, *Halvorssen v. Simpson*, 328 F.R.D. 30, 35 (E.D.N.Y. 2018) (denying motion for alternative service without prejudice to renew if service could not be properly effectuated under the Hague Convention within six months).

### B. Statutory Basis for Personal Jurisdiction

As discussed above, Plaintiff has failed to properly serve RIGOL Inc.; however, the Court will proceed in its analysis assuming that, if need be, effective service may yet

be made. As a statutory basis for exercising personal jurisdiction, Freeplay points to both Civil Practice Law and Rules ("CPLR") § 302 (the state long-arm statute) and Federal Rule of Civil Procedure 4(k)(2) (the federal long-arm statute). For the reasons stated below, the Court finds that neither of these provides for personal jurisdiction over RIGOL Inc.

1. *State Long-arm Jurisdiction*

Freeplay identifies CPLR § 302(a)(1) and CPLR§ 302(a)(3) as possible bases for exercising jurisdiction. The Court considers both in turn.

   a. *CPLR § 302(a)(1)*

Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)). Ultimately, a defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)). "As for the second part of the test, a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246 (internal quotations and alterations omitted).

Freeplay points to four examples of RIGOL Inc.'s alleged business transactions in New York. The Court finds none of these convincing. First, Freeplay argues that

10

RIGOL Inc. has two distributors located in New York. On its face, however, the evidence suggests that these are actually RIGOL USA's distributors. Doc. 25, Ex. 4 (listing distributors under the header, "RIGOL USA," followed by RIGOL USA's Oregon address). Additionally, Freeplay has not suggested an articulable nexus between the distribution centers and the allegedly infringing videos.

Next, Freeplay argues that the fact that RIGOL Inc. made direct sales to a New York customer between 2014 and 2017—the same years during which the allegedly infringing videos were available on the Internet—suggests that the videos had a direct effect on RIGOL Inc.'s New York sales. Doc. 25, Ex. 14 at 14 ("The N.Y. customer's familiarity with the RIGOL brand and RIGOL [Inc.] via these online advertisements caused the N.Y. customer to bypass the distributors and RIGOL USA and engage in a direct transaction with RIGOL [Inc.]"). For its part, RIGOL Inc. has provided sworn statements that the products sold in New York were not the subject of the advertisements. Doc. 24, Ex. 2 ¶¶ 9–12. Freeplay has done nothing to rebut these assertions. There are myriad other ways in which a New York customer may have become familiar with the RIGOL Inc. brand. This connection is far too speculative to confer personal jurisdiction.

Third, Freeplay points to the hypothetical contracts RIGOL Inc. would have entered into with a N.Y.-based business had it properly licensed the music from Freeplay. However, this is not a case where RIGOL Inc. "engaged in the purposeful creation of a continuing relationship with a New York corporation." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 514 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). Indeed, it did not enter into such a relationship at all. Although Freeplay urges that "[b]ut for RIGOL [Inc.]'s violation of U.S. Copyright law, it would have most certainly

11

projected itself into N.Y," it does nothing to show that the music at issue was in any way essential to the advertising videos or so unique that RIGOL Inc. would not simply have obtained other music that was free to use. Doc. 25, Ex. 14 at 15.

Finally, Freeplay suggests that RIGOL Inc.'s commercial gain at the expense of a New York-based corporation is enough to confer personal jurisdiction. Again, this does not show that RIGOL Inc. purposefully transacted business within the state of New York and as such is irrelevant to the CPLR § 302(a)(1) analysis.

  b. *CPLR § 302(a)(3)*

Freeplay next argues that personal jurisdiction is appropriate pursuant to CPLR § 302(a)(3). CPLR § 302(a)(3) provides for jurisdiction if the non-domiciliary:

> [C]ommits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

Pursuant to § 302(a)(3), courts apply a "situs-of-injury test, which asks them to locate the original event which caused the injury." *Ikeda v. J. Sisters 57, Inc.*, No. 14 Civ. 3570 (ER), 2015 WL 4096255, at *4 (S.D.N.Y. July 6, 2015) (internal quotations and citation marks omitted). For CPLR § 302(a)(3) to apply, the alleged tortious act—in this case, the copyright infringement—must have "caus[ed] injury within [New York]." *Troma Ent'mt, Inc. v. Centennial Pics. Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (internal quotation marks and citation omitted). This requirement is not satisfied here.[3]

---

[3] The application of CPLR § 302(a)(3)(i) is further barred because Freeplay has failed to allege any non-conclusory facts to support its position that "RIGOL USA does not function independently." Doc. 25, Ex.

12

"It is well-settled that 'residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Id.* (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)). This general rule has been narrowly modified in the context of "copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet." *Penguin Grp. (USA), Inc. v. Am. Buddha*, 16 N.Y.3d 295, 301 (2011). In *Penguin Group (USA), Inc. v. American Buddha*, the New York Court of Appeals, answering a question certified to it by the Second Circuit, found that, in these circumstances, "the situs of injury for purposes of determining long-arm jurisdiction under [§ 302(a)(3)(ii)] . . . is the location of the copyright holder." *Id.* at 301–302 (internal quotation marks omitted). The court looked to two factors to reach its conclusion: (1) the nature of the alleged infringement and (2) "the unique bundle of rights granted to copyright owners." *Id.* at 304–305. As to the first element, the court found that the injury alleged, digital piracy, was unique because its consequences included "the instantaneous availability of those copyrighted works on American Buddha's Web sites for anyone, in New York or elsewhere, with an Internet connection to read and download the books free of charge." *Id*. This necessarily meant that there

---

14 at 17. Without this relationship between RIGOL USA and RIGOL Inc., Freeplay's argument fails. In determining whether the corporate form should be disregarded for jurisdictional purposes, courts in this Circuit look to a variety of factors, including "the failure to observe corporate formality; inadequate capitalization; intermingling of personal and corporate funds; the sharing of common office space, address and telephone numbers . . . ; an overlap of ownership, directors, officers or personnel; [and] the use of the corporation as a means to perpetrate the wrongful act against the plaintiff." *In re Platinum & Palladium Antitrust Litig.*, 14 Civ. 9391 (GHW), 2017 WL 1169626, at *48 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks and citation omitted). "[N]o one factor is dispositive." *Gowen v. Helly Nahmad Gallery, Inc.*, 77 N.Y.S.3d 605, 615 (2018) (quotation marks and citation omitted). Here, there are no allegations that RIGOL USA is undercapitalized, or that the entities do not conduct business at arms-length. There are also no allegations of an overlap in ownership, officers, or personnel. Given these circumstances, the Court declines to impute RIGOL USA's New York contacts to RIGOL Inc. Just as Freeplay has failed to establish that RIGOL USA is a "mere department" of RIGOL Inc., so, too, has it failed to establish that its corporate form should be ignored. *See Beech Aircraft Corp.*, 751 F.3d at 120–23.

was no one place "where plaintiff lost business." *Id.* at 305 (quotation marks and citation omitted). Additionally, the court found that, in that case, the alleged injuries to intellectual property rights, such as the "diminishment of the incentive to publish or write" or "market confusion," were sufficient to establish the location of the copyright owner as the situs of injury. *Id.* at 305–306.

The parties here dispute not only where the injury occurred, but the very nature of the injury as well. Freeplay suggests that if it does nothing, it will be injured because it will lose "composers' contribution to its catalog due to its public acquiescence to infringement." Doc. 25, Ex. 14 at 17. RIGOL Inc., however, maintains that "Freeplay has failed to allege any specific harm other than . . . simple economic losses." Doc. 24, Ex .1 at 15. The Court agrees with RIGOL Inc. In its complaint, Freeplay points almost exclusively to statutory and actual damages stemming from lost licensing opportunities. Doc. 1. ¶¶ 41–83. Even in its briefing, Freeplay admits that purchasing a retroactive license and paying past fees "would have resolved this matter." Doc. 25, Ex. 14 at 5.

Given the nature of the injury in this case, the Court finds that its situs is not New York. There is no allegation that RIGOL Inc. committed the type of digital piracy at issue in *Penguin*, "i.e., that defendant uploaded the copyrighted material so that third parties could download unlicensed versions over the Internet," *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, 16 Civ. 442 (NRB), 2017 WL 449913, at *6 (S.D.N.Y. Jan. 18, 2017), or that it otherwise caused harm "that cannot be 'circumscribed' to a particular locality." *Troma*, 729 F.3d at 220 (quoting *Penguin*, 16 N.Y.3d at 305). For example, "Freeplay does not allege that it was deprived of revenue or potential customers when the videos were viewed on the Internet by third parties." *Arbogast*, 2017 WL 449913, at *5.

Neither has Freeplay "allege[d] facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights of the sort *Penguin* . . . recognized." *Troma*, 729 F.3d at 220. As the court in *Troma* stated, "[i]nfringement comes in many stripes. It is not the case that any infringement anywhere can be said to diminish incentives to engage in a creative enterprise, or to harm, beyond the immediate loss of profits, the continuing value of one or more of a copyright holder's bundle of rights." *Id.* To the extent Freeplay alleges any such harm, it "is far too speculative to support a finding that [it] suffered injury in New York." *Id.*

This conclusion is in keeping with similar holdings involving this very plaintiff and this very issue in *Arbogast*, 2017 WL 449913, and in *Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*, No. 16 Civ. 5883 (JGK) (RWL), 2018 WL 3639929 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, No. 16 Civ. 5883 (JGK), 2018 WL 3632524 (S.D.N.Y. July 31, 2018). The courts in these cases were confronted with personal jurisdiction challenges where the infringement did not take place in New York, but where Freeplay asserted that personal jurisdiction would nonetheless be appropriate pursuant to CPLR § 302(a)(3)(ii). In *Arbogast*, the court rejected Freeplay's position that, under *Penguin*, "it need only establish that it is a New York copyright holder and Arbogast uploaded [its] copyrighted music to the Internet for public access." 2017 WL 449913, at *7 (quotation marks and citation omitted). Such a rule, the court found, "would mean that posting copyrighted material to the Internet for any purpose—such as posting a copyrighted photo to Instagram or Facebook—would automatically cause an in-state injury to a New York copyright holder." *Id.* The court in *Nian*, similarly confronted with a case where "Freeplay claim[ed] copyright infringement by a non-New

15

York entity based on use of its copyrighted works in promotional videos posted to the Internet," also found that Freeplay had alleged neither an injury that could not be circumscribed to a particular location nor an injury to its "unique bundle of copyright rights" 2018 WL 3639929, at *11–12. The Court finds these cases both analogous and persuasive. As in *Abrogast* and *Nian*, Freeplay has failed to establish an injury in New York for purposes of CPLR § 302(a)(3).

For the reasons stated above, the Court finds that it does not have personal jurisdiction over RIGOL Inc. pursuant to New York's long-arm statute.

    *c. Federal Long-arm Statute*

Alternatively, Freeplay suggests that the Court has personal jurisdiction over RIGOL Inc. pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) states:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

This rule "extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States." *Chew v. Dietrich*, 143 F.3d 24, 27 (2d Cir. 1998) (internal quotation marks and citation omitted). It was "specifically designed to 'correct[] a gap' in the enforcement of federal law in international cases. The gap arose from the general rule that a federal district court's personal jurisdiction extends only as far as that of a state court in the state where the federal court sits." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (citation omitted). In response to this gap,

> Rule 4(k)(2) allows courts to exercise personal jurisdiction over a defendant on condition: "(1) that plaintiff's cause of action arise[s] under the federal law; (2) that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State; and (3) that the defendant's total contacts with the *United States* as a whole are sufficient to confer the court with personal jurisdiction without offending due process."

*In re Platinum and Palladium Antitrust Litig.*, 2017 WL 1169626, at *41 (quoting *Hartford Fire Ins. v. M/V MSC INSA*, No. 03 Civ. 2196 (SAS), 2003 WL 22990090, at *3 (S.D.N.Y. Dec. 18, 2003)).

Under Rule 4(k)(2), if a plaintiff can make a prima facie showing that the defendant is not subject to general jurisdiction in the courts of any state, "the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 429 (S.D.N.Y. 2009) (citation omitted). This framework "prevents the 'Catch-22' in which a defendant would be forced to choose between conceding its potential amenability to suit in federal court (by denying that any state court has jurisdiction over it) or conceding its potential amenability to suit in some identified state court." *Id.* (quotation marks and citation omitted).

RIGOL Inc. asserts that Freeplay has failed to establish that it is not subject to personal jurisdiction in any other state—specifically, Oregon. Doc. 26 at 2. "Oregon law authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). The inquiry, therefore, is whether the exercise of personal jurisdiction over RIGOL Inc. by Oregon courts would "comport[] with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation omitted)).

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). General jurisdiction exists when the defendant's contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler*, 571 U.S. at 128 (citations omitted). A corporation is "essentially at home" in the state of incorporation and the state of its principal place of business. *Id.* at 138–39. Specific jurisdiction, on the other hand, may lie "if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1086 (D. Or. 2016) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985)). To determine if minimum contacts exist, courts in the Ninth Circuit look to whether "the defendant perform[ed] an act or consummate[d] a transaction within the forum, purposefully availing itself of the privilege of conducting activities there." *RV Savvy Prods., Inc. v. RV Masters, LLC*, 19 Civ. 184 (MK), 2019 WL 5858192, at *4 (D. Or. July 19, 2019), *report and recommendation adopted*, 19 Civ. 184 (MK), 2019 WL 5541246 (D. Or. Oct. 25, 2019) (citations omitted).

To support its position that no other court would have personal jurisdiction, Freeplay offers only that RIGOL Inc. is not incorporated in the United States and does not maintain any headquarters or offices here. Doc. 25, Ex. 14 at 8. This may be sufficient to establish a prima facie case that general jurisdiction over RIGOL Inc. would be inappropriate in Oregon. It is not, however, sufficient to establish that specific jurisdiction would be inappropriate. For example, Freeplay has not shown that RIGOL

Inc. "committed an intentional act expressly aimed at [Oregon], which caused harm in [Oregon]." *RV Savvy Prods.*, 2019 WL 5858192, at *4 (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003)). Furthermore, Freeplay has put forth no arguments suggesting that the exercise of personal jurisdiction by Oregon courts would be unreasonable. *See Columbia Sportswear N. Am., Inc. v. Ventex Co., Ltd.*, 17 Civ. 623 (SI), 2019 WL 4783105, at *8 (D. Or. Sept. 30, 2019) (quoting *Bancroft & Masters Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (listing the seven factors the Ninth Circuit considers in making a reasonableness determination).

Therefore, the Court finds that Freeplay has failed to meet its burden under Rule 4(k)(2).

### C. Jurisdictional Discovery

Finally, Freeplay requests leave to conduct limited discovery in the event it has not made a prima facie showing of personal jurisdiction over RIGOL Inc. Doc. 25, Ex. 14 at 25. In the Second Circuit, "[i]t is well settled . . . that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler,* 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)). Jurisdictional discovery is appropriate when the party has made a "colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Id.* (internal citation omitted); *see Ikeda*, 2015 WL 4096255.

19

Of course, courts may decline to permit jurisdictional discovery where a plaintiff has not made out a prima facie case for jurisdiction. *See In re Angeln GmBH & Co. KG*, 510 Fed. App'x 90, 92–93 (2d Cir. 2013). Here, Freeplay has not identified what information it hopes to uncover with this discovery or how that information might bear on the jurisdictional inquiry. *See Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate if the plaintiff fails to show how the information to be obtained bears on the jurisdictional issue). Specifically, the Court is unaware of how additional discovery would contribute to determining either the situs of the injury or Oregon's potential as an alternative forum. Therefore, Freeplay's request is denied.

### IV. CONCLUSION

For the foregoing reasons, RIGOL Inc.'s motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24, and to terminate RIGOL Inc. as a party.

SO ORDERED.

Dated: February 4, 2020
New York, New York

_____
EDGARDO RAMOS, U.S.D.J.