# EXHIBIT E

Frank A. Mazzeo
Ryder, Mazzeo & Konieczny LLC
808 Bethlehem Pike, Suite 200
Colmar, PA 18915
Tel: (215) 997-0248
Fax: (215) 977-0266
fmazzeo@rmkiplaw.com
Attorney for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FREEPLAY MUSIC LLC                                    :
                                                      : Civil Action No.: 1:18-cv-10980-ER
         Plaintiff                                    :
                                                      :
                                                      :
         v.                                           : MEMORANDUM OF LAW IN
                                                      : SUPPORT OF DEFENDANT RIGOL
                                                      : TECHNOLOGIES INC.'S MOTION TO
                                                      : DISMISS
RIGOL TECHNOLOGIES USA INC. and                       :
RIGOL TECHNOLOGIES, INC.                              :
                                                      :
         Defendants                                   :

-------------------------------------------------------------X


**RIGOL TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF
PROPER SERVICE AND PERSONAL JURISDICTION**


Defendant, RIGOL Technologies, Inc. (hereinafter "RIGOL China"), by and through its

counsel, Ryder, Mazzeo & Konieczny LLC, hereby files this Motion to Dismiss the Complaint in

this action for lack of personal jurisdiction under Federal Rule 12(b)(2), and lack of proper

service under Federal Rule 12(b)(5) against Plaintiff Freeplay Music LLC ("Freeplay").   RIGOL

China respectfully submits this Memorandum of Law in support of its Motion to Dismiss

Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(5).

i

## Table of Contents

I.      PRELIMINARY STATEMENT……………………………………...………1

II.     FACTUAL BACKGROUND…………………………...…………………….........2

        A.  Creation Of Allegedly Infringing Videos…………………...……………….…2

        B.  RIGOL China's Contacts With New York…………….....…………………..…2

        C.  RIGOL USA's Independent Entity Status……………………………..……...3

        D.  Service Insufficiency……………………………………………………………...3

III.    PROCEDURAL HISTORY…………………………………………………..…4

IV.     LEGAL STANDARD……………………………………………………….....…4

V.      ARGUMENT……..……………………………………………………………..5

            A.  THE COURT LACKS PERSONAL JURISDICTION OVER RIGOL
                CHINA……………………………………………………………...…..7

            1.  RIGOL USA IS NOT AN ALTER EGO OF RIGOL CHINA……………7

            2.  GENERAL JURISDICTION CANNOT BE EXERCISED OVER RIGOL
                CHINA…………………………………………………………………8

            3.  THE COURT LACKS SPECIFIC JURISDICTION OVER RIGOL
                CHINA…………………………………………..……………………11

                a. The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1)..……13

                b. The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2)……..13

                c. The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3)……..14

                    (1) Freeplay has not established a prima facie case that CPLR

                    § 302(a)(3)(i) is satisfied…………………………….. ….14

                    (2)  Freeplay has not satisfied CPLR§ 302(a)(3)(ii)……………..14

                d.  The exercise of specific jurisdiction over RIGOL China does not
                comport with the Due Process Clause………………………...……17

B.  FREEPLAY HAS NOT PROPERLY SERVED RIGOL CHINA…………17

VI.     CONCLUSION…………………………………………………………………....19

## Table of Citations

## Cases

Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30 (2d Cir. 2010)…………………………...4

Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996)……………..…….…5

C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc., 419 F.Supp.2d 419 (S.D.N.Y. 2005)……………………………………………………………………………………...5,18

Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694 (1988)………………………5,17

Van Wert v. Black & Decker, Inc., 246 A.D.2d 773, 667 N.Y.S.2d 770 (3d Dep't 1998)………..5

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998)……………....…….…...5, 9,18

Transfield ER Cape Ltd. v. Indus. Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009)...…………7

H. Heller & Co. v. Novacor Chemicals Ltd., 726 F.Supp. 49 (S.D.N.Y. 1988)……………..….7

Heller & Co. v. Novacor, 875 F.2d 856 (2d Cir. 1989)……………...…………………………7

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131 (2d Cir. 1991)…..7

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117 (2d Cir. 1984)………………………………………………………………………………7,8,9,10

Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries, No. 03 CIV. 1681(LAP), 2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004)……………………………………………8

Daimler AG v. Bauman, 134 S.Ct. 746, 761 (2014)…………………………………………..9, 10

Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)……...………9

Gucci America, Inc. v. Li, 768 F.3d 122, 135 (2d Cir. 2014)…………………………………10

Skrodzki v. Marcello, 810 F. Supp. 2d 501, 507 (E.D.N.Y. 2011)………………………...10

Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)……………………...10

Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F.Supp.3d 97, 104 (S.D.N.Y. Feb. 6, 2015)……………………………………………………………………………..……10

Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221 (2d Cir. 2014)…………………11

International Shoe Co. v. Washington, 326 U. S. 310 (1945)…………………………...……12

Milliken v. Meyer, 311 U. S. 457 (1940)……………….……………………………………..12

Keeton v. Hustler Magazine, Inc., 465 U. S. 770 (1984)…………………….…………………12

Shaffer v. Heitner, 433 U. S. 186 (1977)……………….……………………………...………12

Walden v. Fiore, 134 S. Ct. 1115(2014)…………………………………………………………12

Burger King Corp. v. Rudzewicz, 471 U. S. 462 (1985)…………………………….…………..13

World-Wide Volkswagen Corp. v. Woodson, 444 U. S. 286 (1980)………………..………..13

 Hanson v. Denckla, 357 U. S. 235 (1958)……………………………………….....................13

Eades v. Kennedy, PC Law Offices, 799 F.3d 161 (2d Cir. 2015)…………………………13

Penguin Group (USA), Inc. v. American Buddha (Am. Buddha V), 106 U.S.P.Q.2d 1306, 1310 (S.D.N.Y. March 7, 2013)……………………………………………………………………14

Troma Entertainment Inc. v. Centennial Pictures Inc., 729 F.3d 215 (2d Cir. 2013)……14, 15, 16

Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317 (1980)…………………………..14

Freeplay Music LLC v. Dave Arbogast Buick-GMC, Inc., 1:16-cv-00442(NRB) (S.D.N.Y. Jan. 18, 2017)……………………………………………………………...……..15, 16, 17

Freeplay Music LLC v. Nian Infosolutions Private Ltd., 16 Civ. 5883 (JGK)(RWL)(S.D.N.Y. July 10, 2018)………………………………………………...………………………16, 17

**Statutes**

CPLR § 302(a)…………………………………………………...………….12, 13, 14, 16 17

**Rules**

Federal Rule of Civil Procedure 12(b)(2)……………………………………………………....1

Federal Rule of Civil Procedure 12(b)(5)……………………………………………………….5

Federal Rule of Civil Procedure 4(f)(1)…………………………………………………………17

## I.      PRELIMINARY STATEMENT

This case arises out of an alleged infringement of Freeplay's copyrights when an employee of RIGOL China allegedly downloaded five (5) music tracks from a third party website and used the music in promotional videos for RIGOL China's products.  These videos were created in China and send to RIGOL Technologies USA Inc. (RIGOL USA), where RIGOL USA edited the videos, added voice over in some cases, and posted the videos to YouTube and Facebook.  When RIGOL USA was notified by Freeplay of the alleged infringement, it immediately removed the videos and links of which it was aware.  RIGOL China was not in any way involved with the posting or removing of the alleged infringing videos in the U.S.

Freeplay filed the instant lawsuit in this District and attempted to serve RIGOL China at the place of business of RIGOL USA in Oregon, U.S.A.  The RIGOL USA employee who received the documents was unaware that the service documents were for both RIGOL USA and RIGOL China.  RIGOL China only became aware of the allegation that it had been served on January 17, 2019.  *See* Declaration of Mr. Wang Yue, Ex. A.

First, pursuant to F.R.C.P. 12(b)(2), the Court lacks personal jurisdiction over RIGOL China.  As Freeplay alleges, RIGOL China is a Chinese corporation with its principal place of business in China.  RIGOL China does not have the type of substantial, continuous, or systematic contacts with New York to subject it to general jurisdiction here. Nor does the dispute here arise out of any forum-related activities by RIGOL China and the exercise of specific jurisdiction is improper.

Second, Freeplay did not even attempt service with the proper provisions of the Hague Convention, of which China is a member, but instead attempted to avoid the proper serving of the documents by serving them on a RIGOL USA employee in Oregon, U.S.A.

Accordingly, RIGOL China respectfully requests that the Court dismiss the Complaint in its entirety against RIGOL China.

## II.      FACTUAL BACKGROUND

Freeplay is a Delaware limited liability company which own music copyrights and operates an online library making its music available to users via a license (both paid and free).

RIGOL China is a manufacturer of testing and measurement equipment, headquartered in Suzhou, China.  RIGOL USA is a wholly owned subsidiary of RIGOL China independently operating in Beaverton, Oregon.

### A.   Creation of allegedly infringing videos

An employee of RIGOL China created the allegedly infringing promotional videos in China featuring RIGOL products and five (5) allegedly infringing music tracks owned by Freeplay.  This employee visited a third party website, not unlike http://www.aigei.com/, which stated that the music on the website was available license-free for users.  The RIGOL China employee downloaded these tracks from the third party website in China and created the videos. He then sent the videos to RIGOL USA which then edited and added a voice over to some of the videos.  The videos were then posted by RIGOL USA on YouTube.

### B.  RIGOL China's contacts with New York

RIGOL China is not registered to do business in New York, nor does it have a principal place of business in New York.  RIGOL China's contacts with New York are minimal at best.

RIGOL China has no distributors or distributor partners in New York. RIGOL China has only sold products directly to one customer in New York and these products are not related to this case because they are not products advertised in the videos at issue.  RIGOL China's sales in New York are insignificant, totaling only $832 in 2017, for example.  RIGOL China does not

maintain any facility, office, store or warehouse in New York.  RIGOL China has no agent for service in New York.  *See* Declaration of Mr. Wang Yue, Ex. A.

### C.  RIGOL USA's independent entity status

RIGOL USA is an Ohio corporation with a principal place of business in Beaverton, Oregon.  RIGOL USA is a fully owned subsidiary of RIGOL China, Inc. but is largely financially independent of RIGOL China.   RIGOL USA has separate bank accounts from RIGOL China and uses its own funds for the maintenance of its property, inventory and business operations.  RIGOL USA uses its own funds to pay salaries of its employees, rent, facility maintenance, insurance policies, workman's compensation insurance, employee benefits and healthcare.  RIGOL USA files its own tax returns.  RIGOL USA operates its own marketing programs, and sales activities including trade show management, website content and maintenance, promotional programs, rebate programs, email management, all independent of RIGOL China. RIGOL USA operates and maintains its own website in the U.S.A.: www.rigolna.com.

RIGOL USA hires its own personnel with limited oversight from RIGOL China.  RIGOL USA has full operational control over its day-to-day operations.  RIGOL USA maintains separate business liability insurance policy that does not include or cover RIGOL China.  *See* Declaration of Mr. Michael Rizzo, Ex. B.

Therefore, Freeplay's improper attempts to effectuate service on RIGOL China through a RIGOL USA employee and attribute the conduct of RIGOL USA to RIGOL China are not warranted.

### D.  Service Insufficiency

On December 5, 2019, an employee of RIGOL USA in Beaverton, Oregon was presented with the summons and complaint in this action for both RIGOL USA and RIGOL China. This service was insufficient as the RIGOL USA employee was not an employee of RIGOL China. Freeplay was required to effectuate service of process by the means set forth in the Hague Convention, however, could not be bothered to do so and instead purported to serve both independent entities through RIGOL USA.

### III.   PROCEDURAL HISTORY

Freeplay filed its complaint against RIGOL USA and RIGOL China on November 26, 2018. A process server attempted to serve both defendants at RIGOL USA's principal place of business in Beaverton, Oregon by serving the documents on an employee on RIGOL USA. Freeplay filed affidavits of service on December 27, 2018 alleging it had served RIGOL China and RIGOL China on December 5, 2018 by serving an employee of RIGOL USA. On January 18, 2019, RIGOL USA filed an answer to the complaint and RIGOL China filed a letter request for a pre-motion conference to request permission to file the instant motion. The pre-motion conference was held on March 12, 2019, wherein the Court granted RIGOL China permission to file the instant motion.

### IV.   LEGAL STANDARD

"In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act under which suit is brought in the case at bar, federal courts are to apply the personal jurisdiction rules of the forum state." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). Thus, to determine whether it has personal jurisdiction, the Court must first look to the laws of the State of New York. If personal jurisdiction is proper under the forum state's long-arm statute, the court then determines whether exercising such jurisdiction comport with the constitutional requirements of due process. *Metro.*

4

*Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 , 567 (2d Cir. 1996).  Neither the New York

Long Arm Statute, nor the constitutional due process provision can support a finding of personal

jurisdiction.

When confronted with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(5) for

insufficient service of process, the burden to show that service was adequate rests with the

plaintiff.  *C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.,* 419 F.Supp.2d 419, 427

(S.D.N.Y. 2005) (citations omitted).  The Hague Convention "provides simple and certain means

by which to serve process on a foreign national."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*,

486 U.S. 694, 706 (1988).  A plaintiff need not comply with the Hague Convention if the foreign

corporation has a domestic subsidiary that is so dominated by the foreign parent as to be an

"agent" or "mere department" thereof.  *Van Wert v. Black & Decker, Inc.*, 246 A.D.2d 773, 775,

667 N.Y.S.2d 770, 772 (3d Dep't 1998).  In making a determination that a subsidiary is an agent

or mere department of a foreign company, courts must consider four factors: (1) common

ownership; (2) the subsidiary's financial dependency on the parent; (3) "the degree to which the

parent corporation interferes in the selection and assignment of the subsidiary's executive

personnel and fails to observe corporate formalities"; and (4) the degree of control exercised by

the parent.  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)(internal quotation

omitted).

### V.    ARGUMENT

Freeplay does not aver any specific facts to support its assertion that the exercise of

personal jurisdiction is appropriate over RIGOL China other than the following generic

statements:

> 7. The Court has personal jurisdiction over RIGOL USA and
> RIGOL CHINA pursuant to New York Civil Practice Law and

Rules §§ 302(1), (2) and (3) et seq. because upon information and belief, they derive substantial revenue from interstate commerce, conduct business over the internet, and have performed acts causing harm to FPM, including infringing copyrights belonging to FPM, a domiciliary of New York, which give rise to this action.
…
14. Upon information and belief, Defendant RIGOL CHINA continuously and systematically transacted business within the State of New York by selling, distributing and/or servicing its goods therein.

15. Upon information and belief, Defendant RIGOL CHINA has committed a tortious act of copyright infringement within the state of New York.

16. Upon information and belief, Defendant RIGOL CHINA has committed a tortious act of copyright infringement without the state of New York causing injury to FPM, a resident and domiciliary of New York.

17. Upon information and belief, Defendant RIGOL CHINA regularly does or solicits business, and engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed and services rendered, in the state of New York.

18. Defendant RIGOL CHINA expects or should reasonably expect its acts of copyright infringement to have consequences in the state of New York and derives substantial revenue from interstate or international commerce.

19. Upon information and belief, RIGOL CHINA has continuously and systematically transacted business within the state of New York by operating and maintaining an interactive website that allows for the transaction of business with customers located therein.

*See* Complaint, ¶¶ 7, 14-19.

Absent from these averments is any specificity regarding the business, infringement and revenue of RIGOL China within the State of New York.  The reason for the absence of these critical facts is that they simply do not exist.  This clear deficiency is discussed in more detail below.  Accordingly, exercising personal jurisdiction over RIGOL China is improper.

Freeplay's feeble attempt to circumvent the Hague Convention, of which China is a member, renders service on RIGOL China improper.  RIGOL USA is not an agent or mere department of RIGOL China and is not authorized to accept service on behalf of RIGOL China.

In fact, RIGOL China did not actually become aware that Freeplay had filed an affidavit alleging it had served RIGOL China until January 17, 2019, a day before it requested permission to file the instant motion.  See Declaration of Mr. Wang Yue, Ex. A.

### A.   THE COURT LACKS PERSONAL JURISDICTION OVER RIGOL CHINA.

### (1)   RIGOL USA is not an alter-ego of RIGOL China.

The Second Circuit has recognized that, under certain conditions, "it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation . . . when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (internal quotation marks and citations omitted).  In general, entities are alter egos when one entity so pervasively controls the other "that the corporate separation is more formal than real."  *H. Heller & Co. v. Novacor Chemicals Ltd*., 726 F.Supp. 49, 54 (S.D.N.Y. 1988), aff'd sub nom. *Heller & Co. v. Novacor*, 875 F.2d 856 (2d Cir. 1989).

In *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991), the Second Circuit made clear that there is an "infinite variety of situations" that might warrant disregarding the corporate veil and that the ultimate question of veil piercing must be decided by "considering the totality of the evidence."[1]  Courts in this District consider four factors in this analysis.

The first factor is really a threshold requirement; the entities must have "nearly identical ownership interests."  *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp*., 751 F.2d 117, 120 (2d Cir. 1984).  It is undisputed that RIGOL USA is wholly-owned by RIGOL China.

---

[1] The evidence regarding the relationship between RIGOL China and RIGOL USA is further detailed in Section V.B. of this Memorandum as well as in accompanying Exhibit A and B, which are incorporated by reference.

The remaining three factors are, generally speaking, the subsidiary's financial dependency on the parent, the degree to which the parent and subsidiary observe corporate formalities, and the parent's control over the subsidiary's operational policies. *See Id.* at 120-22. No one factor is dispositive. *See Id.*

When considering financial dependency, the courts look for whether the "parent provides no- or low-interest loans to the subsidiary or extends credit on terms not otherwise available, guarantees the subsidiary's obligations, or provides and pays for insurance coverage or other necessities on behalf of the subsidiary . . . and whether the subsidiary retains its own profits or whether they are received by and reported on the financial statements of the parent." *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03 CIV. 1681(LAP), 2004 WL 2199547, at *10 (S.D.N.Y. Sept. 29, 2004) (internal quotations and citations omitted).

Other than an initial start up loan provided in approximately 2009, RIGOL China does not provide any loans to RIGOL USA; does not provide or pay for insurance coverage of RIGOL USA; and RIGOL USA retains and uses its own profits for its own operations.  *See* Declarations of Mr. Wang Yue and Mr. Michael Rizzo, Ex. A and B.  Accordingly, this factor weighs in favor of not finding alter egos.

The next factor of the alter-ego test is the degree to which the parent "fails to observe corporate formalities" and "interferes in the selection and assignment of the subsidiary's executive personnel." *Beech*, 751 F.2d at 121.

RIGOL China did select and assign the current executive personnel of RIGOL USA, however, these executive personnel do not serve as employees, officers or directors of RIGOL China and RIGOL China does not direct their day-to-day decisions and operations.  *See* Declaration of Mr. Michael Rizzo, Ex. B.  Accordingly, this factor lies neutral in the inquiry.

8

The final factor is the "degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Beech*, 751 F.2d at 122.  RIGOL China does not interfere in the day-to-day operations of RIGOL USA.  RIGOL USA operates its own marketing programs, and sales activities including trade show management, website content and maintenance, promotional programs, rebate programs, email management, all independent of RIGOL China.  *See* Declaration of Mr. Michael Rizzo, Ex. B.

Therefore, this factor weighs in favor of not finding alter egos.

An overall analysis of the evidence in its totality supports a finding that RIGOL USA and RIGOL China are wholly separate entities that do not warrant a finding of alter egos.

### (2) GENERAL JURISDICTION CANNOT BE EXERCISED OVER RIGOL CHINA.

Under CPLR § 301, a New York court "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  New York case law historically permitted the exercise of personal jurisdiction over a foreign defendant who is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the state." *Janzini*, 148 F.3d at 184.  In *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014), the Supreme Court clarified whether the exercise of general jurisdiction over a foreign defendant comports with the Due Process Clause by holding that, other than in an "exceptional case", a defendant corporation is only subject to general jurisdiction in its place of incorporation and where it has its principal place of business. *Daimler*, 134 S. Ct. at 761 n.19.  The inquiry then "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 796 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  The

Second Circuit applied *Daimler* in holding that the existence of a New York office did not constitute an "exceptional case" when a defendant's contacts were "so continuous and systematic as to render it essentially at home in the forum." *Gucci America, Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 761). Prior to *Daimler* and *Gucci*, New York courts considered the following factors in determining general jurisdiction, including "(1) 'the existence of an office in New York'; (2) 'the solicitation of business in the state' (3) 'the presence of bank accounts and other property in the state'; and (4) 'the presences of employees of the foreign defendant in the state.'" *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 507 (E.D.N.Y. 2011) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985)). This Court has held that these factors are now "relevant only if they exist to such a degree in comparison to the corporation's overall national and international presence that would render the corporation an "exceptional case" where it is at home in additional forum." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F.Supp.3d 97, 104 (S.D.N.Y. Feb. 6, 2015).

As RIGOL China's Declaration makes clear, its minimal contacts with New York do not warrant a finding that it is essentially "at home" in New York. RIGOL China is not incorporated in the State of New York, nor does it maintain its principal place of business there. In fact, RIGOL China does not maintain any offices in the State of New York, nor does it have any bank accounts or maintain any other property in New York. RIGOL China has no distributors or distributor partners in New York. RIGOL China does not maintain any facility, office, store or warehouse in New York. RIGOL China has no agent for service in New York. RIGOL China does not have any employees in New York. RIGOL China does not operate or maintain a website in the United States.

RIGOL China had previously sold some of its life sciences products directly to a single customer in New York beginning in 2014.  These products are not sold through RIGOL USA, or through any distributors in New York.  These products were not featured, mentioned or otherwise referred to in the videos at issue in this litigation.  Furthermore, these sales amounted to only $832 in 2017, for example, and no products have been sold to this customer, or any other customer in New York, since 2017.  *See* Declaration of Mr. Wang Yue, Ex. A.  Therefore, exercise of general jurisdiction over RIGOL China would violate the Due Process Clause of the Fourteenth Amendment.

Where a claim is made that a foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state.  *See Beech,* 751 F.2d at 120.  Even if a claimant relies upon an agency or mere department theory to impute the subsidiary's contacts to a parent company for general jurisdiction, they must also show that the parent company would be considered "at home" in that state.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014).

RIGOL China strongly maintains that RIGOL USA is a separate entity from itself, however, even if the acts of RIGOL USA were to be imputed to RIGOL China, this would not eliminate a need for a finding that RIGOL China is "at home" in New York, which cannot be established.

Accordingly, a finding of general jurisdiction cannot be supported under *both* New York state law and the Due Process Clause.

### (3) THE COURT LACKS SPECIFIC JURISDICTION OVER RIGOL CHINA.

Freeplay has set forth the following provisions of CPLR § 302(a)[2] as applicable to support specific jurisdiction over RIGOL:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who . . .
>
> > 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> >
> > 2. commits a tortious act within the state . . . ; or
> >
> > 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; …

Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U. S. 457, 463 (1940)). The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant under the Due Process Clause "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U. S. 186, 204 (1977)).  For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). The relationship of defendant and the forum state must arise out of contacts that the "defendant

---

[2] As a preliminary matter, Freeplay does not accurately identify the provisions of New York's Long-Arm Statute upon which it relies in its Complaint, stating that personal jurisdiction is proper under "§§302(1), (2) and (3)." *See* Complaint at ¶ 7.  RIGOL China has interpreted these statutes as referring to §§ 302(a)(1), 302(a)(2), and 302(a)(3).

himself " creates with the forum State.  *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985).  Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 291-92 (1980). "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the minimal contacts with that State that are a prerequisite to its exercise of power over him." *Hanson v. Denckla*, 357 U. S. 235, 253–254 (1958) (internal quotations omitted).

Freeplay does not, and cannot, demonstrate specific jurisdiction over RIGOL China under any subpart of § 302(a), nor does the exercise of specific jurisdiction over RIGOL China comport with the Due Process Clause.

### a.   The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1).

To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

RIGOL China's contacts and transaction of business within New York state do not give rise to the cause of action in this case, nor has such a circumstance been alleged.  Accordingly, CPLR 302(a)(1) is inapplicable and personal jurisdiction cannot be exercised under this provision.

### b.   The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2).

Freeplay alleges in its complaint that RIGOL China "performed acts causing harm to [Freeplay], including infringing copyrights belonging to [Freeplay], a domiciliary of New York, which give rise to this action."  *See* Complaint at ¶ 7.  This mere allegation is insufficient to support a *prima facie* case that the tortious act occurred in the state.

13

### c. The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3).

#### (1)  Freeplay has not established a prima facie case that CPLR § 302(a)(3)(i) is satisfied.

As previously stated, it cannot be established that RIGOL China "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." RIGOL China was formed and is headquartered in China, and only derived modest revenue from New York for products unrelated to this lawsuit.  *See* Declaration of Mr. Wang Yue, Ex. A.  Accordingly, this provision is inapplicable.

#### (2) Freeplay has not satisfied CPLR § 302(a)(3)(ii).

To establish personal jurisdiction under 302(a)(3)(ii), "a plaintiff must satisfy five elements: (1) the defendant's tortious act was committed outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York; and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Group (USA), Inc. v. American Buddha (Am. Buddha V)*, 106 U.S.P.Q.2d 1306, 1310 (S.D.N.Y. March 7, 2013) (internal quotation marks omitted).

The third factor weighs heavily in favor of RIGOL China.  The mere fact that Freeplay alleges harm, and it is located in New York, is not sufficient to establish an injury in New York. It is well-established that "residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction" under section 302(1)(3).  *Troma Entertainment Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013); *see also Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980).  Freeplay must set forth a non-speculative, and direct

injury to a person or entity in New York that goes beyond the simple economic losses that its New York based business allegedly suffered.  *Troma,* 729 F. 3d at 218.  Freeplay has failed to allege any specific harm other than these simple economic losses.  Therefore, this factor has not been satisfied.

In *Freeplay Music LLC v. Dave Arbogast Buick-GMC, Inc.*, 1:16-cv-00442(NRB) (S.D.N.Y. Jan. 18, 2017) ("*Arbogast*"), a sister court encountered a case with many identical material facts to the instant case and found that the exercise of personal jurisdiction was not warranted as the third factor was not satisfied.  In *Arbogast*, Freeplay brought a copyright infringement case against an Ohio car dealership for uploading advertisement videos to the internet containing Freeplay's copyrighted music.  In that case, the defendant had even more contacts with New York than RIGOL China.

In a well-reasoned opinion, the court found that the nature of Freeplay's injury was the loss of licensing revenue from the defendant's use of copyrighted music without a license.  It found controlling the Second Circuit's analysis in *Troma* which specifically found that "the place where the plaintiff's business is lost or threatened exerts a significant gravitational influence on the jurisdictional analysis."  *Troma*, 729 F.3d at 220 (internal quotations omitted).  The court found that the only injury which could be inferred by the complaint in that case was the loss of defendant as a potential customer and corresponding loss of licensing revenue, which occurred in Ohio, not in New York.

The court in *Arbogast* also found that Freeplay did not assert adequately that it had suffered an injury to its unique bundle of rights as a copyright holder, finding *Troma* again instructional which stated that:

> it is not the case that any infringement anywhere can be said to
> diminish incentives to engage in a creative enterprise, or to harm,

> beyond the immediate loss of profits, the continuing value of one
> or more of a copyright holder's bundle of rights.  Certainly the
> availability of the statutory damage remedy under the copyright
> laws does not establish automatically that this sort of injury has
> occurred.

*Troma*, 729 F.3d at 220.

The court emphasized that the defendant had not uploaded videos with the alleged infringing music in order to make it available so that others could download pirated copies.

Accordingly, the court found that the alleged loss of licensing revenue by Freeplay did not satisfy CPLR 302(a)(2)(ii)'s in-state requirement.  The alleged injury to Freeplay was found to be akin to a traditional commercial tort cases where the situs of injury is the place where plaintiff lost business.  As a result, the court held that it did not possess personal jurisdiction over defendant in New York under CPLR §302(a)(3)(ii).

Another sister court faced with a similar set of facts also came to the same conclusion that personal jurisdiction could not be exercised under CPLR §302(a)(3)(ii).  In *Freeplay Music LLC v. Nian Infosolutions Private Ltd.*, 16 Civ. 5883 (JGK)(RWL)(S.D.N.Y. July 10, 2018) ("*Nian*"), Freeplay brought a copyright infringement suit against an Indian defendant for uploading videos containing music from Freeplay's music catalogs.  The court in that case reasoned that because Freeplay had not alleged that the musical works were uploaded by the defendant with the intent to make the works freely accessible for viewing and downloading by anyone with an internet connection, thereby depriving Freeplay of revenue from users nationwide, the harm alleged by Freeplay was a narrowly circumscribed economic injury limited to the lost license fees from defendant in India.  Therefore, exercise of jurisdiction under CPLR §302(a)(3)(ii) was improper.

Similarly, in the instant case, the alleged infringement occurred when the music was allegedly used to create videos in China and possibly when the videos were uploaded to RIGOL USA's website in Oregon.  These videos were not created with the aim that others could download and use the music for their own purposes.  In much the same way as in *Abrogast* and *Nian*, Freeplay has not satisfied the "in-state" requirement of CPLR § 302(a)(3)(ii) and specific jurisdiction cannot be appropriately exercised under this provision.

### d.  The exercise of specific jurisdiction over RIGOL China does not comport with the Due Process Clause.

It is clear that any conduct on the part of RIGOL China with New York was not such that the exercise of jurisdiction of RIGOL China would not offend "traditional notions of fair play and substantial justice."  As previously stated, the contact that RIGOL China directly had with New York was minimal at best, and the alleged cause of action in this case did not in any way arise out of this contact.  To haul RIGOL China into this Court would be unreasonable as the only personal liberty that such jurisdiction may protect is that of the plaintiff, Freeplay, which does not constitute proper grounds that comport with due process.  Accordingly, the exercise of specific jurisdiction over RIGOL China would violate due process.

## B.  FREEPLAY HAS NOT PROPERLY SERVED RIGOL CHINA.

Under Federal Rule of Civil Procedure 4(f)(1), service of process upon individuals of foreign companies may be effectuated "by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention."  Fed. R. Civ. Pro. 4(f)(1).  As both the United States and China are signatories to the Hague Convention, that pact governs service of process in this case.  *See Schlunk,* 486 U.S. 694, 698-99.  The Hague Convention requires signatory countries to establish a Central Authority to receive requests for

service of documents from other countries and to serve those documents by methods compatible with the internal laws of the receiving state. *Id.*

A plaintiff need not comply with the Hague Convention if the foreign corporation has a domestic subsidiary that "is so dominated by the foreign parent as to be a 'mere department'" thereof. See *C3 Media & Marketing Group, LLC,* 419 F.Supp.2d 419. In making this determination, courts must consider four factors: (1) common ownership; (2) the subsidiary's financial dependency on the parent; (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control exercised by the parent. *Jazini*, 148 F.3d at 185 (internal quotation omitted).

Although RIGOL USA is a wholly owned subsidiary of RIGOL China, it is not a mere department or agent of RIGOL China such that service on RIGOL USA properly constitutes service on RIGOL China. As emphasized in the Factual Background, Section V. A 1, and the accompanying Declarations attached as Exhibits A and B, the facts clearly demonstrate the independent entity status of RIGOL USA. RIGOL USA is an Ohio corporation with a principal place of business in Beaverton, Oregon. RIGOL China is a Chinese corporation with its principal place of business in Suzhou, China. RIGOL USA is largely financially independent of RIGOL China. RIGOL USA has separate bank accounts from RIGOL China and uses its own funds for the maintenance of its property, inventory and business operations. RIGOL USA uses its own funds to pay salaries of its employees, rent, facility maintenance, insurance policies, workman's compensation insurance, employee benefits and healthcare. RIGOL USA files its own tax returns. RIGOL USA operates its own marketing programs and sales activities without the interference of RIGOL China, including trade show management, website content and

maintenance, promotional programs, rebate programs, email management.  RIGOL USA operates and maintains its own website in the U.S.A.:  www.rigolna.com.

RIGOL USA hires all its own personnel with limited oversight from RIGOL China. RIGOL USA has full operational control over its day-to-day operations.  RIGOL USA maintains separate business liability insurance policy that does not include or cover RIGOL China.  *See* Declaration of Mr. Michael Rizzo, Ex. B.

A consideration of these factors weighs heavily in favor of a finding that RIGOL USA is not an "agent" or "mere department" of RIGOL China, and therefore, service was not properly effectuated on RIGOL China through RIGOL USA.

## VI.     CONCLUSION

RIGOL China submits that the exercise of personal jurisdiction over it is not appropriate in this case.  Furthermore, proper service has not been effectuated on RIGOL China. Accordingly, RIGOL China respectfully requests that this Honorable Court grant the instant motion to dismiss.

Respectfully submitted,

Ryder, Mazzeo & Konieczny LLC

Date: <u>April 12, 2019</u>

By: <u>/FrankAMazzeo/</u>
Frank A. Mazzeo
808 Bethlehem Pike, Suite 200
Colmar, PA 18915
Tel: (215) 997-0248
Fax: (215) 997-0266
fmazzeo@rmkiplaw.com
*Attorney for Defendant RIGOL CHINA*