UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FREEPLAY MUSIC, LLC,

        Plaintiff,

   v.

RIGOL TECHNOLOGIES USA, INC. and
RIGOL TECHNOLOGIES, INC.

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF SCOTT SCHREER**

Civil Action No.: 1:18-cv-10980-ER

| STATE OF NEW YORK | ) |
|---|---|
| | ) ss.: |
| COUNTY OF NEW YORK (AFFIANT) | ) |
| COUNTY OF NASSAU (NOTARY) | ) |

SCOTT SCHREER, having been duly sworn, declares under the penalty of perjury that the following is true and correct:

1. I am the Chief Executive Officer of the Plaintiff, FREEPLAY MUSIC, LLC ("FPM"). I submit this declaration in support of FPM's Motion for Partial Summary Judgment on Liability pursuant to Federal Rule of Civil Procedure 56.

2. The matters set forth herein are based upon my personal knowledge.

3. I am an Emmy-nominated producer and composer and have won seven (7) BMI Writer of the Year Awards.

4. During my career I composed and produced the "NFL on Fox" theme song among numerous other theme songs for various television programs.

5. I founded FPM, an online production music library, in 2001.

1

6. Production music is music that is composed for the purpose of synchronization with, and augmentation of, other kinds of media. The public encounters production music every day in commercials, online videos, video games, DVD menus, movies, TV show and radio theme songs, tradeshow or art displays, commercial presentations, hold music, etc.

7. Production music adds great value when used to enhance an audiovisual advertisement, because it increases consumer engagement and attention to the video and the product it features. This results in greater consumer recognition of the brand or company, increased sales, increased revenue, and overall commercial gain.

8. Production music libraries like FPM are often staffed by composers and music publishers whose entire body of work may consist of production music. These composers and publishers are employees or contractors of music libraries who are dependent on royalty payments from the licensing of their songs through websites like FPM's. Their ability to earn a living depends on the income of the music library generated through licensing fees.

9. Infringing uses of FPM's production music, like the ones at issue in this action, cause a pecuniary loss to real people, as well as an unfair dilution of the value of our production music catalog in the marketplace. FPM's songs are our sole revenue-generating assets, and the continued viability of the business is dependent on diligent protection of the songs from unauthorized use, copying or distribution.

10. FPM makes a significant portion of its gross revenues from licensing fees, annual ASCAP/BMI Performance Royalties and other website-specific online monetization of its music. We have been fortunate enough in that we have only had to file copyright infringement claims a handful of times.

11. FPM's Terms of Use make clear that all of FPM's musical content is protected by copyright. *See* Berman Decl., Ex. "G". At all relevant times, FPM has been the owner of the copyrighted works, "Highway Five", Registration No. 337-205; "Can Do", Registration No. 333-637; "English Channel", Registration No. 335-678; "Topaz", Registration No. 337-144; and "Clear", Registration No. 333-651; and the copyright registration certificates are annexed to the Complaint. *See* Berman Decl., Ex. "C", Exhibits 1-1 through 1-5.

12. FPM makes the songs in its catalog available to be licensed for synchronization with audiovisual works through its website. The songs are in digital format and can be downloaded from FPM's website anywhere in the world. The use of FPM's songs is governed by FPM's Terms of Use and other pricing information, referred to as a "rate card" in the production music industry. FPM's Terms of Use and rate card are clearly posted on its website. Our customers can browse FPM's website to preview the songs available for synchronization and then go through a "check-out" process whereby customers select a license type from the website's list of licenses based on the customer's intended use for the songs. For online commercial uses, the license fee is paid upfront giving the purchaser business a license to "synchronize" a song to one video for online play of that video at unlimited URLs for one year. The purchaser business must pay a renewal licensing fee each year. If the purchaser business wants to use the same song in a different video, it must purchase a separate license for that use.

13. The requirement that the commercial use of FPM's music requires the purchase of a license is conspicuously posted in numerous places on FPM's website. Furthermore, FPM has always required the payment of a license fee for the commercial use of its music, including the use in any YouTube videos. In the twenty (20) years that FPM has been in business, it has issued millions of licenses for the uses of its songs without issue.

14. In or about late December 2016, FPM's copyright administrator, TuneSat, LLC ("TuneSat") discovered a number of videos advertising RIGOL products on YouTube and Facebook, which contained one or more of FPM's copyrighted songs. RIGOL is a wholly owned subsidiary of RIGOL China, a China-based multinational corporation that designs, manufactures, and sells sophisticated electronic testing equipment. (*See* Berman Decl., Ex. "D", p. 1, ¶4).

15. Beginning on January 6, 2017, TuneSat contacted the Defendants numerous times on our behalf and asked the Defendants to cease their unauthorized uses of FPM's works and to purchase a retroactive license for what they had already used. *See* Berman Decl., Ex. "B", pp. 37-61. RIGOL engaged in at least 170 unauthorized uses of five of FPM's copyrighted songs on RIGOL's YouTube and Facebook webpages and benefitted from these unlicensed uses at FPM's expense.

16. While Defendants initially took down most of the infringing videos, they then reposted some of them after they were put on notice by TuneSat. Defendants not only refused to purchase a retroactive license, but also refused to pay the outstanding past licensing fees which would have resolved this matter. RIGOL USA General Manager Michael Rizzo stated that they considered removal of the infringing videos to be a "complete resolution" of the matter and had "no plans for further compensatory action." *See* Berman Decl., Ex. "B", p. 9-10. As a result, FPM, was forced to file this action to collect the outstanding licensing fees and to protect its copyrights, especially because composers who license their music to FPM will no longer license music to us if FPM does nothing to collect licensing fees that should have been paid.

WHEREFORE, for the reasons set forth herein, as well as in the accompanying Berman Declaration and Memorandum of Law, your declarant respectfully requests that this Honorable Court grant Plaintiff FPM's Motion for Partial Summary Judgment on Liability against Defendant

RIGOL in its entirety, together with such other and further relief as this Court deems just and proper.

_____
SCOTT SCHREER

Sworn to before me this
6th day of May 2020 in the
manner set forth in New York State
Executive Order 202.7.

_____
NOTARY PUBLIC

Gisela A. Rubenstein
Notary Public
No. 01RU4822317
Qualified in Nassau County
Commission Expires: 11/30/22